# EXHIBIT I

# REQUEST
# FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS
## DEMANDE AUX FINS DE SIGNIFICATION OU DE NOTIFICATION À L'ÉTRANGER D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE

**Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, signed at The Hague, the 15th of November 1965.**
Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye le 15 novembre 1965.

| **Identity and address of the applicant**<br>Identité et adresse du requérant | **Address of receiving authority**<br>Adresse de l'autorité destinataire |
|---|---|
| Shane B. Vogt – FBN 257620*<br>Email: shane @svogtlaw.com | High Court of Justice of the British Virgin Islands |

**The undersigned applicant has the honour to transmit – in duplicate – the documents listed below and, in conformity with Article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.:**
Le requérant soussigné a l'honneur de faire parvenir – en double exemplaire – à l'autorité destinataire les documents ci-dessous énumérés, en la priant, conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au destinataire, à savoir :

| **(identity and address)**<br>(identité et adresse) | AI Robotics Venture Strategy 3 Ltd. D/b/a/ ClothOff<br>3076 Sir Francis Drake's Highway<br>P.O. Box 34643<br>Road Town, Tortola<br>VIRGIN ISLANDS, BRITISH |
|---|---|

| ☑ | a) | **in accordance with the provisions of sub-paragraph a) of the first paragraph of Article 5 of the Convention\***<br>selon les formes légales (article 5, alinéa premier, lettre a))* |
|---|---|---|
| ☐ | b) | **in accordance with the following particular method (sub-paragraph b) of the first paragraph of Article 5)\*:**<br>selon la forme particulière suivante (article 5, alinéa premier, lettre b)* : |
| ☐ | c) | **by delivery to the addressee, if he accepts it voluntarily (second paragraph of Article 5)\***<br>le cas échéant, par remise simple (article 5, alinéa 2)* |

**The authority is requested to return or to have returned to the applicant a copy of the documents - and of the annexes\* - with the attached certificate.**
Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes* - avec l'attestation ci-jointe.

*List of documents / Énumération des pièces*

-Complaint and Demand for Jury Trial
-Summons in a Civil Case
-Civil Cover Sheet
-DOJ Guidance on Attorneys as Competent Authorities

\* if appropriate / s'il y a lieu

| **Done at** / Fait à<br>January 14, 2026<br>**The** / le | **Signature and/or stamp**<br>Signature et / ou cachet |
|---|---|

Permanent Bureau July 2017

# CERTIFICATE
## ATTESTATION

**The undersigned authority has the honour to certify, in conformity with Article 6 of the Convention,**
L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,

☐ **1. that the document has been served***
que la demande a été exécutée*

| | |
|---|---|
| **— the (date)** / le (date): | |
| **— at (place, street, number):** à (localité, rue, numéro) : | |

| | | |
|---|---|---|
| **— in one of the following methods authorised by Article 5:** dans une des formes suivantes prévues à l'article 5 : | | |
| ☐ | **a)** | **in accordance with the provisions of sub-paragraph a) of the first paragraph of Article 5 of the Convention*** selon les formes légales (article 5, alinéa premier, lettre a))* |
| ☐ | **b)** | **in accordance with the following particular method*:** selon la forme particulière suivante* : |
| ☐ | **c)** | **by delivery to the addressee, if he accepts it voluntarily*** par remise simple* |

**The documents referred to in the request have been delivered to:**
Les documents mentionnés dans la demande ont été remis à :

| | |
|---|---|
| **Identity and description of person:** Identité et qualité de la personne : | |
| **Relationship to the addressee (family, business or other):** Liens de parenté, de subordination ou autres, avec le destinataire de l'acte : | |

☐ **2. that the document has not been served, by reason of the following facts*:**
que la demande n'a pas été exécutée, en raison des faits suivants* :

| |
|---|
| |

☐ **In conformity with the second paragraph of Article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement*.**
Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint*.

***Annexes** / Annexes*

| | |
|---|---|
| **Documents returned:** Pièces renvoyées : | |
| **In appropriate cases, documents establishing the service:** Le cas échéant, les documents justificatifs de l'exécution : | |

\* if appropriate / s'il y a lieu

| | |
|---|---|
| **Done at** / Fait à <br><br> **The** / le | **Signature and/or stamp** Signature et / ou cachet |

# WARNING
## AVERTISSEMENT

**Identity and address of the addressee**
Identité et adresse du destinataire

**AI Robotics Venture Strategy 3 Ltd. D/b/a/ ClothOff**
**3076 Sir Francis Drake's Highway**
**P.O. Box 34643**
Road Town, Tortola
VIRGIN ISLANDS, BRITISH                    **IMPORTANT**

**THE ENCLOSED DOCUMENT IS OF A LEGAL NATURE AND MAY AFFECT YOUR RIGHTS AND OBLIGATIONS. THE 'SUMMARY OF THE DOCUMENT TO BE SERVED' WILL GIVE YOU SOME INFORMATION ABOUT ITS NATURE AND PURPOSE. YOU SHOULD HOWEVER READ THE DOCUMENT ITSELF CAREFULLY. IT MAY BE NECESSARY TO SEEK LEGAL ADVICE.**

**IF YOUR FINANCIAL RESOURCES ARE INSUFFICIENT YOU SHOULD SEEK INFORMATION ON THE POSSIBILITY OF OBTAINING LEGAL AID OR ADVICE EITHER IN THE COUNTRY WHERE YOU LIVE OR IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED.**

**ENQUIRIES ABOUT THE AVAILABILITY OF LEGAL AID OR ADVICE IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED MAY BE DIRECTED TO:**

TRÈS IMPORTANT

LE DOCUMENT CI-JOINT EST DE NATURE JURIDIQUE ET PEUT AFFECTER VOS DROITS ET OBLIGATIONS. LES « ÉLÉMENTS ESSENTIELS DE L'ACTE » VOUS DONNENT QUELQUES INFORMATIONS SUR SA NATURE ET SON OBJET. IL EST TOUTEFOIS INDISPENSABLE DE LIRE ATTENTIVEMENT LE TEXTE MÊME DU DOCUMENT. IL PEUT ÊTRE NÉCESSAIRE DE DEMANDER UN AVIS JURIDIQUE.

SI VOS RESSOURCES SONT INSUFFISANTES, RENSEIGNEZ-VOUS SUR LA POSSIBILITÉ D'OBTENIR L'ASSISTANCE JUDICIAIRE ET LA CONSULTATION JURIDIQUE, SOIT DANS VOTRE PAYS, SOIT DANS LE PAYS D'ORIGINE DU DOCUMENT.

LES DEMANDES DE RENSEIGNEMENTS SUR LES POSSIBILITÉS D'OBTENIR L'ASSISTANCE JUDICIAIRE OU LA CONSULTATION JURIDIQUE DANS LE PAYS D'ORIGINE DU DOCUMENT PEUVENT ÊTRE ADRESSÉES À :

**It is recommended that the standard terms in the notice be written in English and French and where appropriate also in the official language, or in one of the official languages of the State in which the document originated. The blanks could be completed either in the language of the State to which the document is to be sent, or in English or French.**

Il est recommandé que les mentions imprimées dans cette note soient rédigées en langue française et en langue anglaise et le cas échéant, en outre, dans la langue ou l'une des langues officielles de l'État d'origine de l'acte. Les blancs pourraient être remplis, soit dans la langue de l'État où le document doit être adressé, soit en langue française, soit en langue anglaise.

# SUMMARY OF THE DOCUMENT TO BE SERVED
## ÉLÉMENTS ESSENTIELS DE L'ACTE

**Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, signed at The Hague, the 15th of November 1965 (Article 5, fourth paragraph).**
Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye le 15 novembre 1965 (article 5, alinéa 4).

| | |
|---|---|
| **Name and address of the requesting authority:** Nom et adresse de l'autorité requérante : | Shane B. Vogt — FBN 257620* Email: shane@svogtlaw.com VOGT LAW |
| **Particulars of the parties*:** Identité des parties* : | JANE DOE, a minor, through her parents and legal guardians, JILL DOE and JACK DOE |

\* If appropriate, identity and address of the person interested in the transmission of the document
S'il y a lieu, identité et adresse de la personne intéressée à la transmission de l'acte

**☑ JUDICIAL DOCUMENT\*\***
ACTE JUDICIAIRE\*\*

| | |
|---|---|
| **Nature and purpose of the document:** Nature et objet de l'acte : | Summons, civil complaint, notice of related action, and DOJ guidance on lawyers as competent authorities |
| **Nature and purpose of the proceedings and, when appropriate, the amount in dispute:** Nature et objet de l'instance, le cas échéant, le montant du litige : | Request for injunction against all activity related to ClothOff, CSAM and NCII. |
| **Date and Place for entering appearance\*\*:** Date et lieu de la comparution\*\* : | John Langford and Tobin Raju Media Freedom & Information Access Clinic Yale Law School P.O. Box 208215 New Haven, CT 06520-8215 |
| **Court which has given judgment\*\*:** Juridiction qui a rendu la décision\*\* : | Not applicable |
| **Date of judgment\*\*:** Date de la décision\*\* : | Not applicable |
| **Time limits stated in the document\*\*:** Indication des délais figurant dans l'acte\*\* : | 21 days upon receipt of summons |

\*\* if appropriate / s'il y a lieu

**☐ EXTRAJUDICIAL DOCUMENT\*\***
ACTE EXTRAJUDICIAIRE\*\*

| | |
|---|---|
| **Nature and purpose of the document:** Nature et objet de l'acte : | |
| **Time-limits stated in the document\*\*:** Indication des délais figurant dans l'acte\*\* : | |

\*\* if appropriate / s'il y a lieu

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JANE DOE, a minor, through her parents and legal guardians, JILL DOE and JACK DOE, *Plaintiff,* v. AI/ROBOTICS VENTURE STRATEGY 3 LTD. d/b/a/ ClothOff, ALAIKSANDR BABICHAU, and DASHA BABICHEVA *Defendants* TELEGRAM GROUP INC.; and TELEGRAM MESSENGER INC.; *Nominal Defendants.* | Case No. _____ **NOTICE OF RELATED CASE** |

Pursuant to Local Rule 40.1(c), Plaintiff, Jane Doe, through her parents legal guardians, Jill Doe and Jack Doe, submits this Notice to inform the Clerk of the Court that this case is related to *Doe v. Smith*, No. 2:24-CV-00634-ES-JBC (D.N.J.), over which Judge Esther Salas is presiding and Magistrate Judge James B. Clark has been assigned.

Local Civil Rule 40.1(c) provides that when a civil action "grows out of the same transaction" as another case already or previously pending before the Court, it should be assigned to the same judge to whom the pending or previously pending case was assigned. When cases are related, assignment to the same judge is required "[w]herever possible." Local Civ. R. 40.1(c). The Rule facilitates judicial efficiency and consistency by ensuring that cases involving the same questions of fact are assigned to a judge already familiar with those facts.

This action is substantially related to and grows out of the same circumstances as *Doe v. Smith*, No. 2:24-cv-00634-ES-JBC (D.N.J.). Both cases involve the production and dissemination of hyper-realistic nude images of a child (child sexual abuse material or "**CSAM**"), Jane Doe, without her knowledge or consent. The first suit, *Doe v. Smith*, involved claims against Jane Doe's classmate who allegedly obtained and disseminated CSAM of Jane Doe from a network of websites and apps known as "ClothOff," a platform that use artificial intelligence to "undress" people without their consent and produce, disclose, and sell nonconsensual, sexually explicit images of identifiable children and adults. Through this action, Jane Doe seeks damages and equitable relief against ClothOff itself, the platform that produced and disseminated the CSAM of Jane Doe (and numerous others), and its owners and operators. Because this action stems from the same underlying transaction or occurrence as *Doe v. Smith*, it falls within Local Rule 40.1(c)'s definition of a related case. Plaintiff therefore respectfully submits that the actions are related for purposes of assignment and consideration by this Court.

Dated: October 14, 2025

Respectfully submitted,

*/s/  John Langford*
Brina Harden, *law student*
Jeanica Geneus, *law student*
Dara Gold, *law student*
Tobin Raju*
John Langford*
MEDIA FREEDOM & INFORMATION
   ACCESS CLINIC
Yale Law School
127 Wall Street
New Haven, CT 06511
(203) 432-2366
John.langford@ylsclinics.org

*Co-Lead Counsel for Plaintiff*
*\* Pro Hac Vice Applications Forthcoming*

/s/ Shane B. Vogt
Shane B. Vogt – FBN 257620*
Email: shane@svogtlaw.com
VOGT LAW
625 E. Twiggs St., Suite 1090
Tampa, Florida 33602
Tel: (813) 737-0717

*Co-Lead Counsel for Plaintiff*
* Pro Hac Vice Applications Forthcoming

/s/ John Gulyas
Jon-Henry Barr, Esq.
(Atty. ID #001561996)
Email: jhbarr@barrgulyas.com
John Gulyas (Atty ID # 023281999)
Email: jgulyas@barrgulyas.com
BARR & GULYAS, L.L.C.
21 Brant Avenue
Clark, New Jersey 07066
(732) 340-0600

*Local Counsel for Plaintiff*

3

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JANE DOE, a minor, through her parents and legal guardians, JILL DOE and JACK DOE, *Plaintiff,* v. AI/ROBOTICS VENTURE STRATEGY 3 LTD. d/b/a/ ClothOff; ALAIKSANDR BABICHAU; and DASHA BABICHEVA, *Defendants,* TELEGRAM GROUP INC.; and TELEGRAM MESSENGER INC., *Nominal Defendants.* | Case No. _____ **Complaint and Demand for Jury Trial** |

## COMPLAINT

1.      This lawsuit seeks to hold AI/Robotics Venture Strategy 3 Ltd. and its owners ("**Defendants**")[1] accountable for their criminal and tortious operation of a network of websites and apps known as "ClothOff" that use artificial intelligence ("**AI**") to produce, disclose, and sell nonconsensual, sexually explicit images of identifiable children and adults to other children and adults.

2.      Defendants solicit users to upload clothed images of other people to ClothOff to "undress" them and produce hyper-realistic nude images of children (child sexual abuse material or "**CSAM**") and adults (nonconsensual intimate images or "**NCII**") without their knowledge or consent. For an extra fee, ClothOff even allows users to select from a menu of pornographic poses

---

[1] "Defendants" refers to Defendants AI/Robotics Venture Strategy 3 Ltd. d/b/a ClothOff, Alaiksandr Babichau, and Dasha Babicheva and not to the Nominal Defendants, unless specified otherwise.

and positions in which to depict the targeted individual, thereby forcing its victims to become unwilling participants in and subjects of child and nonconsensual pornography.

3.  ClothOff produces and distributes hyper-realistic AI-generated CSAM and NCII of people that are indistinguishable from real photographs. ClothOff adds no stamp to images to indicate that they are not real, and viewers unaware of the images' provenance have no way of knowing whether the images are authentic or fabricated. Once created, these images can be shared endlessly without the depicted victim's knowledge and absent their consent.

4.  Defendants market ClothOff—including in social media campaigns targeted at minors—as an AI tool that can be used to "undress anyone." Defendants intentionally make ClothOff accessible to everyone on the Internet without safeguards to prevent users from producing CSAM or to prevent minors from accessing its services, making it a breeding ground for child pornography, sexual exploitation, and abuse.

5.  Defendants have made the production and distribution of illegal CSAM and NCII of anyone to anyone as easy as possible—it takes just three clicks to generate an image on ClothOff.

6.  The sole purpose of Defendants' criminal endeavor is to generate profits by enticing users to easily, quickly, and anonymously obtain CSAM and NCII of identifiable individuals that are nearly indistinguishable from real photos and can be rapidly, easily, and endlessly shared and disseminated online and through social media.

7.  Defendants also market and provide access to the technology underlying ClothOff's service to users, developers, and other platforms, which has facilitated the development of copycat websites that use ClothOff's technology to produce still more CSAM and NCII.

8.  Defendants' entire business model is predicated on the criminal and tortious exploitation and victimization of children and adults.

9.      Foreseeably, and as Defendants intended, the use of ClothOff has run rampant in the United States, including among teenagers and students who use ClothOff to obtain CSAM and NCII of minor classmates, teachers, celebrities, and countless others.

10.     Through no fault of her own, Plaintiff Jane Doe fell prey to Defendants' predatory business in the fall of 2023, when a group of her New Jersey high school classmates obtained and shared CSAM of Jane Doe and other students using ClothOff.

11.     Jane Doe was mortified and emotionally distraught, and she has experienced lasting consequences ever since. Because there is no way to determine how far the images of her were distributed, Jane Doe now lives in constant fear that CSAM of her remains available on ClothOff and elsewhere. She is distressed that those images may be further distributed to others, and that her image has been and will continue to be used to help train ClothOff's AI system to better generate CSAM of other girls.

12.     ClothOff is available across the Internet and on various platforms today. Every day ClothOff remains available is another day more targets fall victim to nonconsensual CSAM and NCII. Left unchecked, Defendants will continue to profit from their criminal exploitation of minors and countless other targets, who ClothOff strips nude for the sexual stimulation and gratification of others.

13.     Jane Doe brings this action to obtain a declaration that Defendants' operation of ClothOff violates federal and state law, enjoin the continued operation of ClothOff, enjoin Defendants from producing and disclosing CSAM and NCII, and recover damages from Defendants for the substantial harm their actions have caused and will continue to cause in the future. Jane Doe has joined Telegram Group Inc., and Telegram Messenger Inc. (the "**Nominal**

**Defendants**") as nominal defendants in this action solely to facilitate the injunctive and equitable relief sought against Defendants.[2]

## JURISDICTION AND VENUE

14.    The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because the action arises under federal law, and pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between a citizen of New Jersey and citizens or subjects of a foreign state.

15.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

16.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim alleged herein occurred in this District.

## PARTIES

**A.  Plaintiff**

17.    Plaintiff, Jane Doe, is a 17-year-old minor who lives with her family in Union County, New Jersey. She appears in this litigation through her parents and legal guardians, Jill Doe and Jack Doe.

---

[2] Jane Doe does not seek to recover damages from Nominal Defendants nor equitable relief against Nominal Defendants apart from: requiring Nominal Defendants to take all necessary actions to restrain Defendants from operating, providing, distributing, offering, promoting, advertising, marketing or receiving payments for or in connection with any website, application, program, platform, or similar product or service that is capable of producing, disclosing, or disseminating CSAM or NCII; enjoining Nominal Defendants from continuing to permit ClothOff to utilize their services; and requiring Nominal Defendants to deplatform ClothOff, and/or remove ClothOff's posts and marketing from their platforms.

**B. Defendants**

18.    Defendant AI/Robotics Venture Strategy 3 Ltd. d/b/a ClothOff ("ClothOff") is a foreign corporation and business that operates the website known as "ClothOff,"[3] which produces, discloses, and sells CSAM and NCII to users in New Jersey and throughout the United States. ClothOff lists its business address as 18 Pasea Estate Road, Road Town, Tortola, VG1110, British Virgin Islands. Prior to listing this address, the ClothOff website directed users to a business allegedly named "Grupo Digital" and purportedly located in Buenos Aires. On information and belief, ClothOff is also affiliated with at least ten other similar services, including "Undress AI Video,"[4] "AI Clothes Remover,"[5] "UndressHer,"[6] "PornWorks,"[7] DeepNudeNow,"[8]"Undress

---

[3] ClothOff's website is available at several different URLs, including: clothoff.net and clothoff.info.

[4] https://clothoff.info/ai-undress-video/.

[5] https://clothoff.info/ai-clothes-remover/.

[6] https://clothoff.info/undressher/.

[7] https://clothoff.info/pornworks/.

[8] https://clothoff.info/deepnudenow/.

Love," [9] PPnude," [10] "Dessi AI," [11] Nudify.Online," [12] "UndressBaby," [13] Face Swap AI," [14]

DeepNudeAI,"[15] "AI Porn,"[16] "AI Cum,"[17] "Nudify",[18] "Undress",[19] and "DrawNudes."[20, 21]

19.    Defendant Alaiksandr Babichau, on information and belief, is a citizen and resident

of Minsk, Belarus who developed, maintains, directs, oversees, and profits from the operations of

ClothOff and its affiliated websites and services.

20.    Defendant Dasha Babicheva, on information and belief, is a citizen and resident of

Minsk, Belarus who developed, maintains, directs, oversees, and profits from the operations of

ClothOff and its affiliated websites and services.

21.    Nominal Defendant Telegram Group Inc. is an entity organized under the laws of

the British Virgin Islands with its registered office in Tortola, British Virgin Islands. Nominal

Defendant Telegram Messenger Inc. is a wholly owned subsidiary of Telegram Group Inc.

Telegram Messenger Inc. owns and operates the text, voice, and video communication application,

---

[9] https://clothoff.info/undress-love/.

[10] https://clothoff.info/ppnude/.

[11] https://clothoff.info/dessi-ai/.

[12] https://clothoff.info/nudify-online/.

[13] https://clothoff.info/undressbaby/.

[14] https://clothoff.info/faceswap/.

[15] https://clothoff.info/deepnude-ai/.

[16] https://clothoff.info/ai-porn/.

[17] https://clothoff.info/ai-cum/.

[18] https://nudify.online.

[19] https://undress.app/draw-nude-ai.

[20] https://drawnudes.app/r/cltpq9eht21y0akvkkmjdrzuq.

[21] Max Hoppenstedt & Marvin Milatz, *The Men Behind Deepfake Pornography*, Der Spiegel (Jul. 1, 2025), https://www.spiegel.de/international/zeitgeist/using-ai-to-humiliate-women-the-men-behind-deepfake-pornography-a-0de338f9-9cec-4ae8-a5ef-9a356b0a5bd4.

Case 2:25-cv-16671-ES-JBC    Document 20-12    Filed 07/09/26    Page 15 of 53 PageID:
218
Case 2:25-cv-16671    Document 1    Filed 10/16/25    Page 7 of 45 PageID: 7

Telegram ("Telegram"). Telegram is named as a Nominal Defendant because, upon information and belief, ClothOff markets and advertises on Telegram, and makes its products and services available for use on Telegram through automated programs known as "bots."

<strong>FACTUAL BACKGROUND</strong>

**A. Overview of AI-Generated CSAM and NCII**

22.    AI-generated CSAM and NCII are computer generated sexually explicit images that appear true-to-life and make someone appear to say or do something they never did.

23.    These images, commonly referred to as "deepfakes," are the product of AI, which is trained on actual images of humans and relies on computational models to generate hyper-realistic images from authentic photographs and videos.

24.    Generative AI models create responses using sophisticated machine learning algorithms and statistical models that are often trained on open-source information and learn patterns and relationships from massive amounts of data, which enable them to generate new content that may be similar, but not identical, to the underlying training data.

25.    "Deepfake" technology has perpetually grown more sophisticated and hyper-realistic. This technology has evolved to such an extent that viewers today often have a hard time recognizing that an image is not real.

26.    As "deepfake" technology has advanced, so too has the availability and use of this technology to produce hyper-realistic CSAM and NCII. Over the past several years, there has been a proliferation of websites and applications, such as ClothOff, specifically designed to generate revenue by enticing people without technological expertise to use their products and services to easily and quickly obtain AI-generated CSAM and NCII.

7

27.    ClothOff and similar sites and applications enable users to obtain CSAM and NCII from fully clothed photos of other people, often using a single picture taken from a victim's social media account.

28.    Most alarmingly, the United States government reports that sexual predators and offenders are among those increasingly using publicly available AI platforms to generate and disseminate CSAM.[22]

**B. AI-Generated CSAM Is Illegal**

29.    All forms of AI-created CSAM are illegal—and deeply harmful to victims and society.[23]

30.    Various federal statutes criminalize the production, dissemination, and sale of AI-generated CSAM. *See* 18 U.S.C. § 2260 (Production of sexually explicit depictions of a minor for importation into the United States); 18 U.S.C. § 2251 (Sexual exploitation of children); 18 U.S.C. § 2252 (Certain activities relating to material involving the sexual exploitation of minors); 18 U.S.C. § 2252A (Certain activities relating to material constituting or containing child pornography); 18 U.S.C. § 1466 (Engaging in the business of selling or transferring obscene matter); 18 U.S.C. § 1465 (Production and transportation of obscene matters for sale or distribution); 18 U.S.C. § 1466A (Obscene visual representations of the sexual abuse of children); 18 U.S.C. § 1470 (Transfer of obscene material to minors); 47 U.S.C. § 223(d) (Sending or displaying offensive material to persons under 18).

---

[22] *See* Dep't of Homeland Sec., *Artificial Intelligence and Combatting Online Child Sexual Exploitation and Abuse* (Sep. 2024), https://www.dhs.gov/sites/default/files/2024-09/24_0920_k2p_genai-bulletin.pdf.

[23] *See* Dep't of Homeland Sec., *Artificial Intelligence and Combatting Online Child Sexual Exploitation and Abuse* (Sep. 2024), https://www.dhs.gov/sites/default/files/2024-09/24_0920_k2p_genai-bulletin.pdf.

31.    In response to the proliferation of AI-generated CSAM, on March 29, 2024, the Federal Bureau of Investigation released a public service announcement warning that CSAM "created with content manipulation technologies, to include generative artificial intelligence (AI), is illegal."[24]



*Figure 1: March 29, 2024 FBI Alert No.: I-032924-PSA*

32.    AI-generated CSAM is not protected by the First Amendment, primarily because this form of child pornography uses and depicts the identifiable faces of real children. *See, e.g.,* *United States v. Hotaling,* 634 F.3d 725, 730 (2d Cir. 2011); *Doe v. Boland,* 698 F.3d 877, 883–84 (6th Cir. 2012); *United States v. Mecham,* 950 F.3d 257, 267 (5th Cir. 2020).

**C.  Jane Doe Learns She Is the Victim of CSAM Produced and Disclosed by ClothOff**

33.    Jane Doe attends high school in Union County, New Jersey.

34.    On Friday, October 20, 2023, while in class at her New Jersey high school, Jane Doe learned that she and several other girls in her class were depicted in CSAM generated using

---

[24] *See* FBI Alert No.: I-032924-PSA, *Child Sexual Abuse Material Created by Generative AI and Similar Online Tools Is Illegal* (Mar. 29, 2024), https://www.ic3.gov/PSA/2024/PSA240329#fn1.

Case 2:25-cv-16671-ES-JBC   Document 20-12   Filed 07/09/26   Page 18 of 53 PageID:
221
Case 2:25-cv-16671   Document 1   Filed 10/16/25   Page 10 of 45 PageID: 10

AI that was being shared among a group of students at her school. At the time, Jane Doe was just 15 years old.

35.     Administrators at Jane Doe's high school also learned of the CSAM images that same morning. They promptly sent an email to all parents with children at the school informing them of the incident and that the incident had created significant disruption.

36.     That same day, the school's assistant principal informed Jane Doe's mother by phone that Jane Doe was a "confirmed victim" depicted in CSAM that a student at the high school had generated of her and other students.

37.     Jane Does's mother later placed a follow-up call with the assistant principal to ask how school officials knew Jane Doe was a confirmed victim. The assistant principal stated that one of the students interviewed by school officials about the incident confirmed that they saw a nude image of Jane Doe among the images being circulated.

38.     Investigation would later reveal that the classmate obtained the CSAM from ClothOff. The classmate, a minor, uploaded to ClothOff a fully clothed image of Jane Doe from Jane Doe's Instagram account so that she could be "undressed."

39.     The fully clothed photo of Jane Doe that was uploaded to ClothOff was a picture of Doe at age 14 in a bathing suit taken by a family member while on vacation.

40.     Using this fully clothed image taken from Jane Doe's Instagram account without her knowledge, ClothOff produced CSAM of Jane Doe in which Jane Doe's actual face and body still appeared, but the clothing in the original photo was removed so that Jane Doe was depicted fully nude with her breasts and pubic area exposed and seemingly posing nude for a photograph taken by another person in a public setting.

41.    After producing this CSAM of Jane Doe, ClothOff transmitted, distributed, and disclosed the image to her minor classmate's phone via the Internet, also without Jane Doe's knowledge or consent.

42.    In the CSAM images produced by ClothOff, Jane Doe and the other minor victims appear fully nude and their actual faces and bodies are fully visible, making them easily identifiable.

43.    ClothOff's advanced AI technology produced CSAM of Jane Doe, her classmates, and countless others, which is extremely realistic and virtually indistinguishable from a real photo.

44.    ClothOff placed no disclaimer on the CSAM of Jane Doe and nothing in the image indicates to viewers that the CSAM is fake, manipulated, or otherwise altered by artificial intelligence. The CSAM ClothOff produced and disclosed of Jane Doe and her minor classmates falsely conveys the impression that Jane Doe and the other minor girls willingly posed nude for photographs in a sexually explicit manner.

45.    Jane Doe never consented to anyone using her image to create a nude image of her.

46.    The CSAM of Jane Doe and several of her minor classmates that ClothOff produced and distributed was subsequently shared among several students at Jane Doe's high school via a Snapchat group. At least one boy at Doe's high school stored the ClothOff-generated CSAM of Doe locally on his phone—i.e., he saved a copy of the photo to his phone—for some period of time before sharing it via Snapchat.

47.    There is no way to know how many others viewed, shared, disclosed, stored, or retained copies of the CSAM of Jane Doe, or with whom else they may have shared the CSAM because of the ease with which such images can be recirculated.

**D. Doe's School and Local Law Enforcement Investigate the Incident**

48.    Jane Doe's school and law enforcement both investigated the incident, and Jane Doe and her parents cooperated fully in both investigations.

49.     On January 24, 2024, Jane Doe and her parents were informed that charges could not be pursued against Jane Doe's classmates, in part because the individuals responsible and other potential witnesses failed to cooperate with, speak to, or provide access to their electronic devices to law enforcement.

50.     Neither the school nor law enforcement ever established how broadly the CSAM of Jane Doe and other girls  was distributed, determined whether the CSAM had been deleted and was no longer accessible, or otherwise ensured that no further dissemination could occur.

**E. ClothOff Is Designed and Marketed to Create CSAM and NCII of Women and Girls Like the Image of Jane Doe**

51.     ClothOff's exploitation of Jane Doe was not anomalous.

52.     ClothOff is deliberately designed to serve, and exists for, one purpose: to generate revenue by producing, disclosing, and disseminating highly realistic CSAM and NCII of actual, identifiable individuals that are indistinguishable from real photographs.[25]

53.     ClothOff's role in producing CSAM is well documented. For example, in September 2023, ClothOff produced CSAM of a 14-year-old minor living in Spain, as well as twenty other girls between the ages of 11 and 17 in another Spanish town.[26]

---

[25] *FAQ*, ClothOff https://clothoff.net/faq (last visited May 13, 2025) ("Cloth Off – is an advanced AI technology designed to 'undress' photos to create the illusion of a naked body. It uses deep learning algorithms to analyze and process the clothing in images, effectively nudifying them to generate realistic results").

[26] Hoppenstedt & Milatz, *supra* note 21.

54.    ClothOff's promotional videos on social media advertise that the service is intended to create just such NCII.



*Figure 2: a March 18, 2024 post from ClothOff's now-suspended X account.*[27]

55.    ClothOff's sites and applications receive at least **27 million** visitors and produce an average of **200,000** images every day.[28]

56.    ClothOff's website invites users to "undress **anybody** with our free service." It promotes itself as allowing "**anyone**" to "view **any image** without clothes," using AI technology that "scans the image and tells how the photo will look without clothes." In a FAQ section on its website, ClothOff explains that "[o]ur technology is constantly being improved to provide the **most realistic results possible**." ClothOff also recently developed a marketing plan to promote its services as permitting users to "choose who you want to undress."[29]

---

[27] The faces of individuals in images from ClothOff's website and promotional materials have been blurred by Plaintiff's counsel out of an abundance of caution in case such images were created by ClothOff without consent of the individual depicted.

[28] Hoppenstedt & Milatz, *supra* note 21.

[29] *Id.*

Case 2:25-cv-16671-ES-JBC    Document 20-12    Filed 07/09/26    Page 22 of 53 PageID:
225
Case 2:25-cv-16671    Document 1    Filed 10/16/25    Page 14 of 45 PageID: 14

57.    ClothOff openly entices users to use the site to "strip your dream girl naked" while highlighting its own ability to convert "[I]nstagram screenshots" into nude photos.



*Figure 3: an April 15, 2023 post from ClothOff's Telegram Channel.*

58.    ClothOff increases its accessibility and widespread use by making itself readily available across numerous operating systems and devices as a website, an app, and a "bot" on Telegram, a social media platform often used as a messaging platform, akin to iMessage. ClothOff allows users to create CSAM and NCII of victims directly on Telegram through the use of its automated bots on Telegram ("Telegram bots"). ClothOff's Telegram bots generate CSAM and

NCII within Telegram's platform. One of ClothOff's Telegram bots has over 602,965 subscribers.[30]



*Figure 4: the ClothOff webpage, https://app.clothoff.info/tg_bot, as of August 2025.*

59.     ClothOff markets its app by explaining that it is "very user-friendly and can be used easily" on "multiple devices." ClothOff's website encourages users to download the app to "enjoy" ClothOff "without restrictions," presumably because the app is designed with features enabling users to circumvent protections designed to prevent age restrictions and the production and receipt of child sexual abuse material.



*Figure 5: from the ClothOff.net homepage as of April 2025.*

---

[30] https://app.clothoff.info/tg_bot.

15

60.    ClothOff's website can currently be accessed at clothoff.net or clothoff.info and was previously available at clothoff.io. ClothOff can also easily be found by anyone, including minors, by performing a simple Google search.



*Figure 6: the ClothOff.io homepage as of July 2023.*

61.    To create CSAM and NCII using ClothOff's website, a user can either log into an existing account or click a button that invites them to "Try now for Free."



*Figure 7: the ClothOff.net homepage as of April 2025.*

62.    ClothOff gives users who select "Try now for Free" a series of instructions about how to select a source photo that will yield the most "accurate" possible results.

63.    ClothOff encourages users to select a photo where the subject is wearing "less clothes" and their face and body is "fully visible," and where the subject is "looking directly into

the camera."



*Figure 8: Instructions on the Clothoff.net website as of April 2025.*

64.     ClothOff further advises users to "upload a good quality photo, so the AI can deliver the best result," and to select an image that depicts only one person.

65.     After showing users these instructions, ClothOff gives users the opportunity to browse a suite of different clothing options, including "naked," "lingerie," "BDSM," and "Schoolgirl." ClothOff also gives users the opportunity to obtain CSAM and NCII that depicts the victim in one of several "sex pose[s]."



*Figure 9: ClothOff.net as of April 2025*

17

66.     ClothOff allows users to preview and experiment with different outfits and poses by making them appear on a model image, which is displayed to the left of the menu of clothing and pose options.



*Figure 10: Clothoff.net as of April 2025*

67.     Once a ClothOff user has selected an outfit or pose, they can click a button to "upload a photo" and select their desired source image from their smart phone or computer.

68.     It takes only three clicks to generate CSAM and NCII using ClothOff.

69.     At all times material to this action, ClothOff allowed users to create one CSAM or NCII image for free for each registered email address provided by users. ClothOff required users to pay to create any additional images. However, users could simply and easily create or obtain additional email addresses to continue obtaining free CSAM and NCII.

70.     Today, ClothOff provides users free NCII images of other individuals in AI-generated lingerie or other outfits (e.g., "Schoolgirl," or "Cheerleader") without entering an email address or creating an account.

71.     On information and belief, at all times material to this action, ClothOff users could obtain CSAM or NCII of another person fully nude or in a "sex pose" without payment. ClothOff required users to "upgrade" by entering an email address or logging in through a third-party service.

The use of third-party credentialing services allowed ClothOff's users to sign in without creating a unique account with ClothOff, and users were then able to generate a fully nude image of another person or a nude image where the victim is depicted in a sex pose. On information and belief, ClothOff does not require verification of an email address before allowing users to generate CSAM or NCII.

72.     ClothOff also offers users the option to pay between $2 and $40 to purchase "coins" that can be used to have ClothOff generate "premium" images, including CSAM and NCII.



*Figure 11: from Clothoff.net as of April 2025*

73.     ClothOff users can purchase coins with credit cards or cryptocurrency.

74.     On information and belief, to avoid detection, when accepting payments through mainstream payment processors such as PayPal and Shopify (which often have terms and conditions that prevent their use on adult materials and services), ClothOff conceals the nature of the transaction by routing payments through fraudulent websites and disguises transactions on its website as purchases from flower shops or motorcycle retailers.

75.     On information and belief, ClothOff saves or stores CSAM and NCII created using its website and app and continues to make that content available online. ClothOff promotes this service, advertising that its app allows users to create a "customizable gallery" to store the images produced by ClothOff.

76.     On information and belief, ClothOff retains the original Instagram image of Jane Doe uploaded to its site and the CSAM image of Jane Doe it produced.

77.     ClothOff's retention of Jane Doe's image permits ClothOff to train its AI model using her image. Researchers have found that other AI platforms used to create CSAM material, when prompted, will directly reproduce both the original image and images generated with the original image.[31]

78.     The potential that ClothOff has made and can continue to make public or distribute to affiliates the CSAM of Jane Doe is a source of intense continuing emotional distress to Jane Doe.

### F. ClothOff Markets Its Services to Users in the United States

79.     It was directly foreseeable that a New Jersey teen would locate and use ClothOff to obtain CSAM of Jane Doe and other minor students.

80.     ClothOff actively markets and promotes itself to users in New Jersey and the rest of the United States, including through various forms of social media known to target minors and teens.

81.     ClothOff's website is easily accessible, appearing as one of the first few search results when searching the company online, and can be accessed in app form by New Jersey consumers through both iOS and Android interfaces, as well as through its Telegram bots. Although ClothOff does not have an official "app" version that can be downloaded directly via app stores, the ClothOff website provides iOS and Android-specific instructions on how to "easily add the Clothoff.net website to your home screen as a web app."

---

[31] Chloe Xiang, *AI Spits Out Exact Copies of Training Images, Real People, Logos, Researchers Find*, WIRED (Feb. 1, 2023), https://www.vice.com/en/article/ai-spits-out-exact-copies-of-training-images-real-people-logos-researchers-find/.

82.     Defendants know that United States-based users are engaging with ClothOff and actively facilitate United States users' ability to circumvent country-specific restrictions to do so.[32]

83.     Defendants have taken affirmative steps to help users bypass content limitations blocking users from fully engaging with the ClothOff website. For example, when users encounter a screen that notes "[a]ccess to the service in your country is blocked," ClothOff instructs users that if they "login from other country [*sic*] using" "special services, magic is right here." The words "special services" contain a hyperlink to another website, which enables users to manipulate their device location to another country to bypass content restrictions.

84.     ClothOff's social media marketing targets United States users, including those in New Jersey, directly. For instance, at or around the time ClothOff produced the CSAM of Jane Doe, ClothOff's now-suspended X account[33] was entirely in English and referenced holidays, events, and superstitions overwhelmingly associated with United States popular culture, including Valentine's Day, April Fool's Day, Black Friday, and Friday the 13th.

85.     ClothOff social media posts explicitly reference American public officials and celebrities and admit that ClothOff's service is intended to create NCII. On January 21, 2025, the now-suspended ClothOff X account posted a video from President Trump's inauguration, in which Facebook CEO Mark Zuckerburg appears to look at the chest of Jeff Bezos' fiancée, Lauren Sánchez. The video's caption reads: "Someone, please tell Mark he could just use ClothOff.shop 😉."

86.     On February 3, 2025, the day after the annual Grammy Awards presented by The Recording Academy of the United States, ClothOff's now-suspended X account posted a picture

---

[32] https://archive.is/dt1yr.

[33] ClothOff's account was suspended in September 2025, after Plaintiff approached X to flag the account and X determined that the account was in violation of the platform's policies.

of American celebrities Kanye West and Bianca Censori on the red carpet of the event, with the caption: "Kanye West and Bianca Censori just gave us a glimpse of what ClothOff would look like in real life! ;) For those who didn't make it to the Grammys – I'm already waiting for you at ClothOff.shop."



*Figure 12: February 3, 2025 post by the now-suspended @Clothoff2 X account (https://x.com/clothoff2).*

### G. ClothOff Conducts No Age Verification and Markets Itself on Platforms Used by Minors

87. ClothOff is readily accessible to any minor with an Internet connection and does not require users to verify their age before accessing or using its services or obtaining CSAM and NCII.

88. ClothOff fails and refuses to implement any reasonable age verification mechanism or technological safeguards to prevent minors from accessing sexually explicit content on its website.

89. Users are not required to check a box, provide a date of birth, or complete any other affirmative step to confirm they are over the age of 18 before using the site.

90.     ClothOff recently announced that it will refuse to develop any form of age verification, even though, unlike most sites that host adult content, ClothOff actively participates in helping users to create and then knowingly hosts CSAM and NCII.[34]

91.     As an archived version of ClothOff reveals, at or around the time ClothOff produced the CSAM of Jane Doe, it displayed no age restriction disclaimer.

92.     At or around the time ClothOff generated the CSAM of Jane Doe, ClothOff permitted users to access its technology using an email address or by signing in using third-party services, such as Google, Discord, and X[35]—none of which  required a user to be over 18 before creating an account and all of which were available to individuals as young as 13.[36]

93.     It takes less than 30 seconds to create a working account on ClothOff.



*Figure 13: from tenminutemail.com. The timer begins at ten minutes, so this account was created in 29 seconds.*

94.     In addition to being easily and openly accessible to minors, at or around the time ClothOff generated the CSAM of Jane Doe, ClothOff knowingly marketed its services on social

---

[34] *Age Verification Laws: A Scam We're Not Buying*, ClothOff, https://clothoff.net/blog/age-verification-clothoff-position (last visited Sep. 23, 2025).

[35] ClothOff's ability to use the third-party credentialing services of Google, Discord, and X was suspended in September 2025, after Plaintiff approached those platforms to flag ClothOff's use of their services and the platforms determined that ClothOff was in violation of their respective policies.

[36] *Sign In*, ClothOff (Sep. 24, 2023), https://archive.is/jO5x0.

Case 2:25-cv-16671-ES-JBC    Document 20-12    Filed 07/09/26    Page 32 of 53 PageID:
235
Case 2:25-cv-16671    Document 1    Filed 10/16/25    Page 24 of 45 PageID: 24

media platforms commonly used by minors—including Instagram, Telegram, and X—with no disclaimer that users must be 18 or over to use the platform. ClothOff also enticed users to market ClothOff to others, including its ability to produce CSAM and NCII on these platforms.

95.    ClothOff offers 200 "free coins"—the equivalent of $15—to users for sharing promotional videos on social media advertising its services.[37] These "free coins" allow users to generate CSAM and NCII and "premium" sexual poses without paying.



*Figure 14: from ClothOff, as of April 2025*

96.    On information and belief, this 200-free-coin promotional program was active in some form at or around the time ClothOff generated the images of Jane Doe.

97.    At the time ClothOff produced CSAM of Jane Doe, it provided an instructional video on YouTube on how to produce advertisements promoting its services. The instructional video was devoid of any guidelines or instructions mentioning any restrictions on age. This video

---

[37] *How to use ClothOff for Free*, ClothOff (2024), https://clothoff.net/blog/how-to-use-clothoff-for-free-coins.

had over 67,000 views on YouTube as of August 2025.[38] ClothOff's YouTube account has since been suspended.[39]

98.    ClothOff's promotional videos on social media advertise that the service is intended to create CSAM and NCII.

99.    As ClothOff's now-suspended YouTube account explained, ClothOff reviews promotional videos its users post on social media to determine if the uploader is entitled to free coins based on criteria that do not include being over 18 years old.



*Figure 15: a sample advertisement from TikTok on November 2023.[40] It does not have any disclaimer about minors.*

100.    ClothOff compensates users who refer paying customers to its website. This compensation begins with, at a minimum, 25 free coins and 50% of all revenue generated from the solicited customers' referrals.[41]

101.    ClothOff knowingly facilitates and promotes the use of its services to produce CSAM and NCII through special features that allow users to directly upload content from

---

[38] *Instructions*, ClothOff (Sep. 28, 2023), https://www.youtube.com/watch?v=ONxlaeK-xgY.

[39] ClothOff's YouTube account was suspended in October 2025, after Plaintiff approached YouTube to flag the account and YouTube determined that the account was in violation of its policies.

[40] qozrumfn (@qozrumfn), TikTok (Nov. 18, 2023), https://www.tiktok.com/@qozrumfn/video/7302857641364131105.

[41] *How to use ClothOff for Free*, ClothOff (2024), https://clothoff.net/blog/how-to-use-clothoff-for-free-coins.

Instagram without requiring any confirmation that the Instagram account is owned by the user uploading an Image directly from Instagram.

102.    Today, ClothOff falsely claims that "[p]rocessing of minors is impossible" and "[e]ven attemps [sic] of such processings will lead to ban of account."[42]  At the time ClothOff produced CSAM of Jane Doe, it knowingly omitted any such disclaimer.

103.    Regardless, this disclaimer from ClothOff is ineffectual and false. ClothOff was used to produce and obtain CSAM of Jane Doe as a minor, and ClothOff users could then, and still can, upload photos of clothed girls under the age of 18 to obtain CSAM of them.

104.    Defendants know minors can and do upload images of other minors to generate CSAM. They market ClothOff to minors, make it easily accessible by minors, and refuse to implement any effective age verification.[43]

### H. Defendants Have Marketed Direct Access to Their Harmful Product to Private Users, Developers, and Other Companies

105.    Exacerbating the reach and harm of ClothOff's illegal and predatory activities, Defendants market and provide direct access to the technology underlying ClothOff to its users, as well as to other developers and companies. On information and belief, direct access to ClothOff's technology allows users to create private CSAM and NCII, enabling them to produce the most extreme kinds of content while better evading detection. On information and belief, direct access to the technology has also led to the creation of multiple copycat websites and applications that enable the production of CSAM and NCII.

106.    To create and run ClothOff, Defendants developed and operate an Application Programming Interface ("API") that allows users to generate highly realistic NCII of minors. An

---

[42] *Terms of Service,* ClothOff (last updated Feb. 12, 2025), https://app.clothoff.info/terms.

[43] ClothOff, *supra* note 3.

API is a tool that lets one program request a service from another program. ClothOff's API allows third-party developers and users to send automated requests and receive in return AI-generated pornographic material, including CSAM and NCII.

107. Because it is automated, there is no human review or content moderation of media created using ClothOff's API prior to dissemination. Instead, the API allows any paying user to programmatically generate and retrieve NCII with no oversight. The API requires no age verification or login to use.

108. The API permits the user to input the age the subject should appear to be in the generated image, setting no minimum age—i.e., the system appears designed to allow users to request the creation of images depicting children. There is also no requirement that the user list the age of the person depicted in the image the user uploads, meaning the program also allows users to upload pictures of children.

109. Defendants make ClothOff's API available on its website to users and third parties.

110. On information and belief, Defendants intentionally designed their API's architecture to easily integrate into third-party systems. Its parameters rely on natural language inputs and use cURL, a basic and widely available tool for interacting with APIs.

111. Because the API's code is easy to integrate, any website, application, or bot can easily integrate it to mass-produce and distribute CSAM and NCII of adults and minors without oversight.

112. Defendants knowingly marketed and distributed their API to users, developers, and third-party platforms. In doing so, Defendants materially contributed to the proliferation of explicit material, including CSAM and NCII, across digital channels.

113.    Multiple copycat websites, phone applications, and bots on the secretive social media site Telegram use ClothOff's API to produce CSAM and NCII similar to those produced by ClothOff. These websites, apps, and Telegram bots include, but are not limited to, okbra.net, undress.cc, UndressHer, DeepNudeNow, Undress Love, PPNUDE, dessi.ai, nudify.online, and UndressBaby.

114.    On information and belief, ClothOff's API has harmed Jane Doe and has the potential to continue harming her, including by using her image to help train ClothOff's AI system to better generate CSAM.

## I.    Jane Doe Has Suffered Substantial, Continuing Harm

115.    The CSAM of Jane Doe is a lasting image depicting her seemingly posing for someone else to photograph her nude in a sexually explicit manner. The possession, disclosure, viewing, and sharing of this image conveys the false impression that Jane Doe willingly posed nude and shared her own nude photo.

116.    Jane Doe is harmed by being falsely portrayed as having participated willingly in the creation and dissemination of CSAM of herself.

117.    Jane Doe is haunted by the knowledge that she is being, and likely will continue to be, exploited for the sexual gratification of others.

118.    Jane Doe is revictimized every time the lasting record of the CSAM of her is displayed, viewed, saved, disclosed, and disseminated.

119.    Knowing that the CSAM images of her will almost inevitably make their way onto the Internet and be retransmitted to others, such as pedophiles and traffickers, has produced a sense of hopelessness for Jane Doe and a perpetual fear that her images can reappear at any time and be viewed by countless others, possibly even friends, family members, future partners, colleges, and

Case 2:25-cv-16671-ES-JBC   Document 20-12   Filed 07/09/26   Page 37 of 53 PageID:
240
Case 2:25-cv-16671   Document 1   Filed 10/16/25   Page 29 of 45 PageID: 29

employers, or the public at large. Jane Doe will have to monitor the Internet for the resurfacing of these images for the remainder of her life.

120.   Jane Doe is further distressed by the knowledge that the CSAM ClothOff produced and retains depicting Doe has been and will continue to be used to help train ClothOff's AI system to better generate CSAM of other girls.

121.   Jane Doe suffered all these harms and damages upon learning that ClothOff had produced and disclosed CSAM of her.

122.   In the days and weeks after learning of the CSAM, Jane Doe struggled to focus on her education, particularly as she had to walk the same school hallways and share the same spaces with classmates who had obtained and viewed CSAM of her from ClothOff.

123.   Jane Doe suffered from anxiety and was unable to eat, missed a significant exam, was unable to focus on schoolwork, missed several days of school, and even wanted to withdraw from school and not return.

124.   Jane Doe also avoided public spaces for fear of people talking about her, mocking her, or further disseminating the CSAM images.

125.   Jane Doe suffered and continues to suffer substantial reputational harm and the psychological harm of knowing that images depicting her nude were created, saved, exploited, disclosed, and disseminated among her classmates and possibly others, including for sexual gratification.

126.   Jane Doe suffered and continues to suffer extreme emotional and psychological harm, mental anguish, and severe disruption to her daily life as the direct and proximate result of ClothOff's criminal and tortious acts—including the production of CSAM of her and the distribution of those images to her minor classmates (and possibly others).

127.     Jane Doe lives in perpetual fear that the CSAM ClothOff produced is still available online, remains in ClothOff's possession, and can and will be shared or posted online at any time.

## CLAIMS FOR RELIEF

### FIRST CLAIM
**15 U.S.C. § 6851**
**(Against all Defendants)**

128.     Plaintiff incorporates and re-alleges all other paragraphs in this complaint as if fully set forth herein.

129.     Defendants used the Internet to produce and disclose one or more intimate visual depictions of Jane Doe in which her face is identifiable, and her body is depicted nude with her genitals, pubic area, and/or nipples uncovered.

130.     Under 15 U.S.C. § 6851(a)(3), Jane Doe is a "depicted individual" in the CSAM produced and disclosed by Defendants because her body appears in whole or in part and she is readily identifiable by virtue of her face in the intimate visual depiction(s) Defendants produced and disclosed.

131.     Defendants produced and disclosed the intimate visual depiction(s) of Jane Doe without Doe's consent and knowingly or recklessly disregarded that Jane Doe did not consent to such disclosure.

132.     Defendants produced and disclosed the intimate visual depiction(s) of Jane Doe both in or affecting interstate commerce and through a means or facility of interstate commerce. Defendants used computer technology and the Internet to produce and disclose such images, provided access to their services for users to obtain the images on the Internet, and relied on electronic devices and the Internet for the dissemination of such images. Defendant distributed these images by means of foreign commerce.

133.    As a direct and proximate result of Defendants' conduct, Jane Doe has suffered substantial injuries, harms, and damages including substantial emotional distress, mental anguish, anxiety, embarrassment, shame, humiliation, and damage to her reputation, in amounts subject to proof and which are continuing in nature and will be suffered in the future; for all of which Defendants are jointly and severally liable.

134.    As a direct and proximate result of Defendants' conduct, Jane Doe is also entitled to recover damages that include the cost of monitoring the Internet for the CSAM of her for the remainder of her life.

135.    Defendants' acts alleged herein were committed knowingly, willfully, wantonly, intentionally, or in blatant disregard of the law and the substantial likelihood of causing harm to Jane Doe.

136.    In addition to the quantifiable damages Jane Doe suffered, she has suffered and will continue to suffer injuries and harms for which there is no adequate remedy at law and which are likely to continue and cause additional harm and injuries in the future unless the equitable relief requested herein is awarded.

137.    The public interest would be served by awarding the equitable relief requested herein.

138.    Based on the facts alleged herein and to be established at trial, Jane Doe has the clear right to the entry of a permanent injunction.

### SECOND CLAIM
**18 U.S.C. § 2255**
**(Against all Defendants)**

139.    Plaintiff incorporates and re-alleges all other paragraphs in this complaint as if fully set forth herein.

140.    Jane Doe, while a minor, was a victim of Defendants' violations of 18 U.S.C. § 2252A (Certain activities relating to material constituting or containing child pornography) for purposes of 18 U.S.C. § 2255.

141.    Defendants knowingly produced with intent to distribute, distributed, and/or transported one or more images of Jane Doe in which her face is identifiable, and her body is depicted nude with her genitals, pubic area, and/or nipples uncovered.

142.    Defendants knew or deliberately ignored that ClothOff is used to produce and disseminate sexually explicit images of minors, including Jane Doe.

143.    ClothOff markets itself—including through social media marketing specifically targeted at minors—as enabling users to "undress anyone" using AI.

144.    ClothOff is intentionally accessible to everyone on the Internet without actual safeguards to verify the ages of individuals depicted in images uploaded to ClothOff for AI-modification, to prevent the website from producing CSAM, or to prevent minors from accessing its services. Defendants did not verify Jane Doe's age when her image was uploaded to ClothOff or before ClothOff produced, disseminated, and/or transported one or more sexually explicit images of her.

145.    Defendants used electronic means to produce with intent to distribute, distributed, and/or transported one or more computer-generated depictions of Jane Doe in which her face is identifiable, and her body is depicted nude with her genitals, pubic area, and/or nipples uncovered.

146.    Jane Doe is an "identifiable minor" in the CSAM Defendants produced, distributed, and/or transported because she was a minor at the time the images were created and modified. Jane Doe is readily identifiable by virtue of her face in the CSAM Defendants produced, distributed, and/or transported.

147.     The AI-generated nude depictions of Jane Doe are indistinguishable from a real photograph. An ordinary person would likely conclude that the nude images are real, and viewers unaware of the images' provenance have no way of knowing whether the images are authentic or fabricated.

148.     Defendants produced with intent to distribute, distributed, and/or transported CSAM of Jane Doe both in or affecting interstate commerce and through a means or facility of interstate commerce. Defendants used computer technology and the Internet to produce and disclose such images, provided access to its services for users to obtain the images through the Internet, and relied on electronic devices and the Internet for the dissemination of such images. Defendant distributed these images by means of foreign commerce.

149.     As a direct and proximate result of Defendants' violations of 18 U.S.C. § 2252A, Jane Doe has suffered substantial personal injuries, harms, and damages including substantial emotional distress, mental anguish, anxiety, embarrassment, shame, humiliation, and damage to her reputation, in amounts subject to proof and which are continuing in nature and will be suffered in the future; for all of which Defendants are jointly and severally liable.

150.     Defendants' acts alleged herein were committed knowingly, willfully, wantonly, intentionally, or in blatant disregard of the law and the substantial likelihood of causing harm to Jane Doe. Pursuant to 18 U.S.C. § 2255(a), Jane Doe is entitled to recover punitive damages from Defendants.

151.     In addition to the quantifiable damages Jane Doe suffered, she has suffered and will continue to suffer injuries and harms for which there is no adequate remedy at law and which are likely to continue and cause additional harm and injuries in the future unless the equitable relief requested herein is awarded.

Case 2:25-cv-16671-ES-JBC   Document 20-12   Filed 07/09/26   Page 42 of 53 PageID:
245
Case 2:25-cv-16671   Document 1   Filed 10/16/25   Page 34 of 45 PageID: 34

152. The public interest would be served by awarding the equitable relief requested herein.

153. Based on the facts alleged herein and to be established at trial, Jane Doe has the clear right to the entry of a permanent injunction.

## THIRD CLAIM

### Violation of Common Law Right of Privacy — Appropriation
### (Against ClothOff)

154. Plaintiff incorporates and re-alleges all other paragraphs in this complaint as if fully set forth herein.

155. Defendants appropriated Jane Doe's likeness for a commercial purpose by producing CSAM of her.

156. Doe did not authorize or consent to Defendants' appropriation of her likeness for any purpose. Indeed, she was not aware of Defendants' existence.

157. Defendants received commercial benefit by offering access to explicit content, including the CSAM of Jane Doe, as a part of a paid service offered to users.

158. As a direct result of Defendants' actions, Jane Doe has suffered substantial personal injuries, harms, and damages including substantial emotional distress, mental anguish, anxiety, embarrassment, shame, humiliation, and damage to her reputation, in amounts subject to proof and which are continuing in nature and will be suffered in the future; for all of which Defendants are jointly and severally liable.

159. Defendants' acts alleged herein were committed knowingly, willfully, wantonly, intentionally, or in blatant disregard of the law and the substantial likelihood of causing harm to Jane Doe.

160. Jane Doe is entitled to recover punitive damages from Defendants.

161.    In addition to the quantifiable damages Jane Doe suffered, she has suffered and will continue to suffer injuries and harms for which there is no adequate remedy at law and which are likely to continue and cause additional harm and injuries in the future unless the equitable relief requested herein is awarded.

162.    The public interest would be served by awarding the equitable relief requested herein.

163.    Based on the facts alleged herein and to be established at trial, Jane Doe has the clear right to the entry of a permanent injunction.

## FOURTH CLAIM
### Violation of Common Law Right of Privacy — Intrusion upon Seclusion
### (Against ClothOff)

164.    Plaintiff incorporates and re-alleges all other paragraphs in this complaint as if fully set forth herein.

165.    Defendants intentionally produced and disclosed NCII and CSAM of Jane Doe without her consent and knowingly or recklessly disregarded that Jane Doe did not authorize or consent to the creation of such image or its disclosure.

166.    ClothOff is designed to produce and disseminate sexually explicit images of people, including minors like Jane Doe. ClothOff markets itself—including through social media marketing specifically targeted at minors—as enabling users to "undress anyone" using AI. ClothOff is intentionally accessible to everyone on the Internet without actual safeguards to verify the consent or ages of individuals depicted in images uploaded to ClothOff for AI-modification, or to prevent the website from producing NCII or CSAM.

167.    Defendants invaded Jane Doe's privacy by producing and distributing NCII and CSAM of Jane Doe without her knowledge or consent.

168.    Defendants exposed Jane Doe's private affairs—her nude image—to public view. Jane Doe had a reasonable expectation of privacy that her nude image would not be produced or distributed for public view. ClothOff produced CSAM of Jane Doe from a fully clothed image of Jane Doe that was posted on her Instagram account. ClothOff removed the clothing from the original image without Jane Doe's consent or knowledge so that she was depicted fully nude with her breasts and pubic area exposed.

169.    Defendants' actions are highly offensive, as the production and distribution of a nude image without the consent of the depicted individual would be highly offensive to any reasonable person.

170.    The AI-generated nude depictions of Jane Doe are indistinguishable from a real photograph. An ordinary person would likely conclude that the nude images are real, and viewers unaware of the images' provenance have no way of knowing whether the images are authentic or fabricated.

171.    As a direct result of Defendants' actions, Jane Doe has suffered substantial personal injuries, harms, and damages including substantial emotional distress, mental anguish, anxiety, embarrassment, shame, humiliation, and damage to her reputation, in amounts subject to proof and which are continuing in nature and will be suffered in the future; for all of which Defendants are jointly and severally liable.

172.    Defendants' acts alleged herein were committed knowingly, willfully, wantonly, intentionally, or in blatant disregard of the law and the substantial likelihood of causing harm to Jane Doe. Jane Doe is entitled to recover punitive damages from Defendants.

173.    In addition to the quantifiable damages Jane Doe suffered, she has suffered and will continue to suffer injuries and harms for which there is no adequate remedy at law and which are

likely to continue and cause additional harm and injuries in the future unless the equitable relief requested herein is awarded.

174.   The public interest would be served by awarding the equitable relief requested herein.

175.   Based on the facts alleged herein and to be established at trial, Jane Doe has the clear right to the entry of a permanent injunction.

### FIFTH CLAIM
#### N.J.S.A. 2A:30B-3
#### (Against all Defendants)

176.   Plaintiff incorporates and re-alleges all other paragraphs in this complaint as if fully set forth herein.

177.   Defendants knowingly used a device to reproduce or reconstruct CSAM of Jane Doe and knowingly produced, procured, manufactured, gave, provided, lent, traded, mailed, delivered, transferred, published, distributed, circulated, disseminated, presented, exhibited, advertised, offered, or agreed to offer CSAM of Jane Doe.

178.   The CSAM of Jane Doe depicts Jane Doe fully nude for the purpose of sexual stimulation or gratification of any person who may view the CSAM.

179.   Defendants received commercial benefit by offering access to explicit content, including the CSAM of Jane Doe, as a part of a paid service offered to users.

180.   As a direct result of Defendants' actions, Jane Doe has suffered substantial personal injuries, harms, and damages including substantial emotional distress, mental anguish, anxiety, embarrassment, shame, humiliation, and damage to her reputation, in amounts subject to proof and which are continuing in nature and will be suffered in the future; for all of which Defendants are jointly and severally liable.

181.    Defendants' acts alleged herein were committed knowingly, willfully, wantonly, intentionally, or in blatant disregard of the law and the substantial likelihood of causing harm to Jane Doe. Jane Doe is entitled to recover punitive damages from Defendants.

182.    In addition to the quantifiable damages Jane Doe suffered, she has suffered and will continue to suffer injuries and harms for which there is no adequate remedy at law and which are likely to continue and cause additional harm and injuries in the future unless the equitable relief requested herein is awarded.

183.    The public interest would be served by awarding the equitable relief requested herein.

184.    Based on the facts alleged herein and to be established at trial, Jane Doe has the clear right to the entry of a permanent injunction.

## SIXTH CLAIM
### Strict Products Liability
### (Against all Defendants)

185.    Plaintiff incorporates and re-alleges all other paragraphs in this complaint as if fully set forth herein.

186.    To the extent Defendants manufactured, designed, distributed, maintained, and/or placed within the stream of commerce the ClothOff websites, application, and services for the purpose of enabling adults to create nude images of other, consenting adults, ClothOff is dangerously defective, including because ClothOff refuses to implement any effective age verification protocols for users or to ensure that images produced do not constitute CSAM or NCII.

187.    Defendants manufactured, designed, distributed, maintained, and/or placed within the stream of commerce a product—the ClothOff websites, application, and services—that

38

Case 2:25-cv-16671-ES-JBC   Document 20-12   Filed 07/09/26   Page 47 of 53 PageID:
250
Case 2:25-cv-16671   Document 1   Filed 10/16/25   Page 39 of 45 PageID: 39

produced CSAM and NCII of adults and children and disclosed and disseminated such CSAM and NCII to others, including minors.

188.    Defendants are responsible for their own conduct as the designers, programmers, manufacturers, sellers, and/or distributors of their dangerously defective product, ClothOff.

189.    When Defendants marketed and made ClothOff available to users, it was in a defective condition, rendering it unfit, unsuitable, and unsafe for its anticipated use in violation of the New Jersey Products Liability Act, § 2A:58C-2.

190.    ClothOff produces and disseminate CSAM and NCII of adults and children to others, including minors.

191.    ClothOff, as manufactured and/or supplied by Defendants, was defective in design and formulation in that, when it was placed in the stream of commerce, the foreseeable risks of harm caused by the product exceeded any claimed benefits of the product.

192.    ClothOff, as manufactured and/or supplied by Defendants, was defectively designed and unreasonably dangerous in that it failed to provide adequate safeguards to prevent the production of CSAM and NCII and/or the disclosure and dissemination of CSAM and NCII to others, including minors.

193.    At all times material hereto, Defendants knew and had reason to know that ClothOff was inherently defective and unreasonably dangerous, as designed and manufactured by Defendants, and when it was used to produce and disclose CSAM and NCII of adults and children.

194.    Defendants had actual knowledge of the dangerous condition and risks of ClothOff, including its ability to produce and disclose CSAM and NCII of adults and children to others, including minors.

195. ClothOff, as manufactured and/or supplied by Defendants, was not reasonably fit, suitable, or safe for its anticipated use, and safer, reasonable alternative designs existed and could have been utilized. Reasonably prudent manufacturers, distributors, suppliers, and/or sellers would not have placed the product in the stream of commerce with knowledge of these design flaws.

196. At the time of the design and manufacture of ClothOff, an alternative, safer, and more practicable design existed which did not have the propensity for generating CSAM and NCII.

197. If the design and manufacture of ClothOff included the alternative, safer, and practicable design, existing at the time of the design and manufacture of the product in controversy, the injuries suffered by Plaintiff would not have occurred.

198. ClothOff does not conduct and refuses to implement any effective age verification to ensure its users were not minors or that the images uploaded to its website did not depict minors. To the contrary, Defendants marketed ClothOff to minors, encouraged minors to use ClothOff, and promoted ClothOff's ability to "undress" other people, including minors, without their knowledge or consent. It was therefore reasonably foreseeable that ClothOff would generate CSAM and NCII, and that generating these images would inflict severe harm on minors, including Jane Doe.

199. As a direct and proximate result of Defendants' conduct, Jane Doe has suffered substantial injuries, harms, and damages including substantial emotional distress, mental anguish, anxiety, embarrassment, shame, humiliation, and damage to her reputation, in amounts subject to proof and which are continuing in nature and will be suffered in the future; for all of which Defendants are jointly and severally liable.

Case 2:25-cv-16671-ES-JBC    Document 20-12    Filed 07/09/26    Page 49 of 53 PageID:
Case 2:25-cv-16671    Document 1    Filed 10/16/25    Page 41 of 45 PageID: 41
252

200.    As a direct and proximate result of Defendants' conduct, Jane Doe is also entitled to recover damages that include the cost of monitoring the Internet for the CSAM of her that was produced and disseminated by Defendants' product (ClothOff) for the remainder of her life

201.    Defendants' acts alleged herein were committed knowingly, willfully, wantonly, intentionally, or in blatant disregard of the law and the substantial likelihood of causing harm to Jane Doe.

## SEVENTH CLAIM
### Intentional Infliction of Emotional Distress
### (Against ClothOff)

202.    Plaintiff incorporates and re-alleges all other paragraphs in this complaint as if fully set forth herein.

203.    In producing and disclosing CSAM of Jane Doe, Defendants inflicted severe emotional distress upon Jane Doe when they knew or should have known that their actions would cause Jane Doe severe emotional distress.

204.    Defendants acted and continue to act intentionally to inflict emotional harm, or recklessly in deliberate disregard of the high probability that their actions would cause harm.

205.    Defendants' behavior was so outrageous in character and extreme in degree that it goes beyond all possible bounds of decency and would be regarded as atrocious and utterly intolerable in a civilized community.

206.    Defendants' actions would cause severe emotional distress to an average person situated similarly to Jane Doe, a minor.

207.    Jane Doe has suffered palpable, severe, and enduring emotional distress so extreme that no reasonable person should be expected to endure it, including mental anguish, anxiety, fear,

41

Case 2:25-cv-16671-ES-JBC    Document 20-12    Filed 07/09/26    Page 50 of 53 PageID:
253
Case 2:25-cv-16671    Document 1    Filed 10/16/25    Page 42 of 45 PageID: 42

embarrassment, humiliation, shame, and considerable disruption to her relationships and to her ability to function normally in daily life.

208.   Defendants' actions directly and proximately caused Jane Doe's severe emotional distress.

209.   Defendants' acts alleged herein were committed knowingly, willfully, wantonly, intentionally, or in blatant disregard of the law and the substantial likelihood of causing harm to Jane Doe.

## EIGHTH CLAIM
### Negligent Infliction of Emotional Distress
### (Against ClothOff)

210.   Plaintiff incorporates and re-alleges all other paragraphs in this complaint as if fully set forth herein.

211.   Defendants owed Jane Doe a duty of reasonable care to avoid causing harm to Jane Doe.

212.   Defendants violated their duty of care to Jane Doe by producing and distributing CSAM of Jane Doe.

213.    The use of ClothOff to obtain CSAM of Jane Doe was reasonably foreseeable. In fact, Defendants promoted the use of ClothOff to obtain CSAM and NCII of others.

214.   As a direct and proximate result of Defendants' actions, Jane Doe has suffered palpable, severe, and enduring emotional distress so extreme that no reasonable person should be expected to endure it, including mental anguish, anxiety, fear, embarrassment, humiliation, shame, and considerable disruption to her relationships and to her ability to function normally in daily life.

215.   Defendants' actions directly and proximately caused Jane Doe's severe emotional distress. Defendants' acts alleged herein were committed knowingly, willfully, wantonly,

Case 2:25-cv-16671-ES-JBC    Document 20-12    Filed 07/09/26    Page 51 of 53 PageID:
Case 2:25-cv-16671    Document 1    Filed 10/16/25    Page 43 of 45 PageID: 43
254

intentionally, or in blatant disregard of the law and the substantial likelihood of causing harm to Jane Doe.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

- a.  order that Plaintiff and Plaintiff's parents shall remain anonymous throughout and after this proceeding and are entitled to proceed herein under a pseudonym;

- b.  order Defendants to delete and destroy any and all CSAM and NCII in their possession, custody, and control, specifically including CSAM of Jane Doe;

- c.  order Defendants to delete and destroy any and all images of Jane Doe in their possession, custody, and control and permanently enjoin Defendants from using any images of Jane Doe to train any AI system that generates nude images of others;

- d.  permanently enjoin all Defendants, their successors, agents, representatives, employees, and any and all other persons who act in concert with Defendants from operating, providing, distributing, offering, and/or promoting any website, application, program, platform, or similar product or service that is capable of producing, disclosing, or disseminating CSAM or NCII;

- e.  permanently enjoin all Defendants, their successors, agents, representatives, employees, and any and all other persons who act in concert with Defendants from marketing and advertising any website, application, program, platform, or similar product or service they own, control or operate that does or is capable of producing disclosing, or disseminating CSAM or NCII;

- f.  permanently enjoin any domain-name registries, domain-name registrars, webhosts, payment processors, search engines, social media platforms, or companies providing user authentication and authorization services or interfaces to Defendants who are provided with notice of the injunction, including Nominal Defendants, to take all necessary actions to restrain Defendants from operating, providing, distributing, offering, promoting, advertising, marketing or receiving payments for or in connection with any website, application, program, platform, or similar product or service that is capable of producing, disclosing, or disseminating CSAM or NCII;

- g.  permanently enjoin Nominal Defendants from continuing to permit ClothOff to utilize their services and order Nominal Defendants to deplatform ClothOff, and/or remove ClothOff's posts and marketing;

h.      award Plaintiff compensatory, actual, and special damages in amounts to be established at trial;

i.      award Plaintiff actual or liquidated damages of no less than $150,000 for each disclosure of an intimate visual depiction of Jane Doe pursuant to 15 U.S.C. § 6851(b)(3);

j.      award Plaintiff actual or liquidated damages of no less than $150,000 pursuant to 15 U.S.C. § 2255;

k.      award Plaintiff treble damages pursuant to N.J.S.A. 2A:30B-3(3)(b);

l.      award Plaintiff punitive damages;

m.      award Plaintiff her costs, attorney's fees, and other disbursements for this action; and

n.      grant any additional relief as the Court deems just and proper.

Dated: October 13, 2025                    Respectfully submitted,

                                           /s/ John Langford
                                           Brina Harden, *law student*
                                           Raymond Perez, *law student*
                                           Andrea DenHoed, *law student*
                                           Atia Ahmed, *law student*
                                           Shannon Sommers, *law student*
                                           Jeanica Geneus, *law student*
                                           Dara Gold, *law student*
                                           Tobin Raju*
                                           John Langford*
                                           MEDIA FREEDOM & INFORMATION
                                               ACCESS CLINIC
                                           Yale Law School
                                           127 Wall Street
                                           New Haven, CT 06511
                                           (203) 432-2366
                                           John.langford@ylsclinics.org

                                           *Co-Lead Counsel for Plaintiff*
                                           *\* Pro Hac Vice Application Forthcoming*

                                           /s/ Shane B. Vogt
                                           Shane B. Vogt – FBN 257620*

Email: shane@svogtlaw.com
VOGT LAW
625 E. Twiggs St., Suite 1090
Tampa, Florida 33602
Tel: (813) 737-0717

*Co-Lead Counsel for Plaintiff*
*\* Pro Hac Vice Application Forthcoming*

/s/ John Gulyas
Jon-Henry Barr, Esq.
(Atty. ID #001561996)
Email: jhbarr@barrgulyas.com
John Gulyas (Atty ID # 023281999)
Email: jgulyas@barrgulyas.com
BARR & GULYAS, L.L.C.
21 Brant Avenue
Clark, New Jersey 07066
(732) 340-0600

*Local Counsel for Plaintiff*